UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS COYOTES BAND OF CAHUILLA & CUPENO INDIANS,<br><br>                        Plaintiff,<br>v.<br><br>KEN SALAZAR, Secretary of the Interior, et al.,<br><br>                        Defendants. | Case No.: 10cv1448 AJB (NLS)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT<br><br>(Docs. 21, 33) |

      Presently before the Court are Plaintiff's Motion for Summary Judgment (Doc. 21) and Defendants' Cross Motion for Summary Judgment (Doc. 33). For the following reasons, Plaintiff's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, and Defendants' Cross Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## I.

## BACKGROUND[1]

      This case arises from the Defendant Bureau of Indian Affairs ("BIA"), Office of Justice Services' ("OJS") denial of Plaintiff's request for a law enforcement funding contract under the Indian Self-Determination and Educational Assistance Act ("ISDEAA"), 25 U.S.C. § 450 et seq. These

---

[1] Except where noted, the following facts are not disputed by the parties and are supported by the Administrative Record ("AR") filed with the Court on April 29, 2011.

contracts are commonly known as "638 contracts." (Plaintiff's Motion for Summary Judgment ("PMSJ") ¶ 1.)

Plaintiff claims the denial was based on an internal, unwritten policy that the Defendants do not provide law enforcement funds to tribes located in a state subject to 18 U.S.C. § 1162, commonly referred to as "P.L. 280." California is a P.L. 280 state. (PMSJ ¶ 1.) Plaintiff cites to evidence in the administrative record supporting the existence of this unwritten policy. Defendants, however, dispute the existence of this internal, unwritten policy. (*See* Defendants' Response to Plaintiff's Statement of Material Facts, Doc. No. 33-5 at p. 3.)

Defendants based their denial of the 638 contract on Sections 450(a)(2)(D) and 450j-1(a) of the ISDEAA, which provide that a contract may be denied if the amount of funds requested exceeds the amount of funding the Department would have otherwise provided to operate the program itself. Defendants explained that because they provided zero law enforcement funding to tribes in California (allegedly because it is a P.L. 280 state), any amount of funding requested by Plaintiff was in excess of the applicable funding level for the contract. (PMSJ ¶ 1.)

Plaintiff has been a federally recognized tribe since 1889. To combat crime on its reservation, Plaintiff in 2007 hired a Chief of Police funded through a federal grant from the Bureau of Justice Assistance, but the grant ended in 2009. Consequently, in February 2009, Plaintiff submitted a written request to OJS seeking a 638 contract for tribal law enforcement services as authorized under the ISDEAA. (PMSJ ¶¶ 8-11.)

OJS denied Plaintiff's request in July 2010, and Plaintiff requested an informal conference with OJS in an attempt to find a compromise, as provided under 25 C.F.R. § 900.51. The informal conference was properly conducted by a "designated representative" appointed by OJS. (PMSJ ¶¶ 13-14.) The OJS designated representative then issued a recommended decision finding that:

1. OJS's underlying rationale for making zero law enforcement funding available to tribes in P.L. 280 states was not valid because P.L. 280 did not divest tribes of their criminal jurisdiction or divest the federal government of its law enforcement responsibility, and there is a need for law enforcement on Plaintiff's reservation not being met by local law enforcement.

    2.    OJS's unwritten policy denying the funding to tribes in P.L. 280 states has been arbitrarily implemented and has deprived Plaintiff equal protection and due process of law.

    3.    OJS's unwritten policy violates the mandates of the APA, since such a policy must be promulgated and receive tribal consultation. (PMSJ ¶ 16.)

In November 2009, Defendants filed a Notice of Appeal with the Interior Board of Indian Appeals ("IBIA"), requesting a decision on whether OJS had a right to appeal its own designated representative's decision and, if not, whether the decision was binding on the department. In January 2010, the IBIA issued an Order Dismissing Appeal, finding that OJS did not have a right of appeal under 25 C.F.R. § 900.157 and declining to address whether the designated representative's decision was binding on OJS. Later that month, OJS informed Plaintiff that because it had no right to appeal, the designated representative's decision "is not binding on the Secretary." (PMSJ ¶¶ 18-20.)

Plaintiff filed its Complaint for injunctive and declaratory relief on July 13, 2010. Plaintiff challenges Defendants' decision and underlying policy supporting the decision as arbitrary, capricious, and contrary to (1) ISDEAA § 450k, (2) the Administrative Procedures Act ("APA"), (3) 5 U.S.C. § 553, (4) equal protection under the U.S. Constitution, and (5) the federal trust responsibilities owed to Plaintiff. (PMSJ ¶ 1.)

Plaintiff filed the instant Motion for Summary Judgment on May 25, 2011, and Defendants filed the instant Cross Motion for Summary Judgment on July 28, 2011.

## II.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party would bear

the burden of proof at trial, the moving party may satisfy its burden on summary judgment by simply pointing out to the Court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987. "The moving party need not disprove the other party's case." *Id.*

Once the movant has made that showing, the burden shifts to the opposing party to produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001)); *see also Miller*, 454 F.3d at 988 ("[T]he nonmoving party must come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 736, 738 (9th Cir. 2000). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Thus, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.

## DISCUSSION

As discussed below, the Court finds that Defendants may not decline Plaintiff's 638 contract for law enforcement funding solely on the basis of Plaintiff's location in a P.L. 280 state. Defendants' policy violates the ISDEAA, the APA, and Plaintiff's right to equal protection of the law. To be clear, the Court is not requiring that Defendants issue the contract or otherwise dictating how Defendants should allocate their funds. Instead, to level the playing field and ensure that Plaintiff's request receives a fair evaluation, the Court enjoins Defendants from using California's P.L. 280 status as the sole reason for declining Plaintiff's contract proposal.

**A.     ISDEAA § 450k**

The ISDEAA allows an Indian tribe to contract with the Department of the Interior ("DOI") to take over operations of federal service programs—including law enforcement—that DOI maintains and operates for the benefit of Indian tribes. 25 U.S.C. § 450f(a)(1)(B).

Under the ISDEAA, the Secretary's authority to promulgate implementing regulations is limited to sixteen specific topics. Outside of those topics, the Secretary may not promulgate any regulation or impose any nonregulatory requirement relating to self-determination contracts. ISDEAA § 450k(a); *see also* 25 C.F.R. § 900.5 ("[A]n Indian tribe or tribal organization is not required to abide by any unpublished requirements such as . . . policy directives of the Secretary, unless otherwise agreed to by the Indian tribe . . . , or otherwise required by law."). Section 450k(a)(2) requires that any implementing regulation be promulgated under the APA's rulemaking provisions, 5 U.S.C. §§ 552, 553. Under Section 450k(d)(1), when promulgating regulations, Defendants must confer with representatives of Indian tribes, tribal organizations, and individual Indians.

Plaintiff argues that Defendants' current policy of not funding law enforcement in P.L. 280 states has not been promulgated under the APA as required by Section 450k(a)(2), so it cannot be viewed as a valid regulation. Further, the policy *cannot* be promulgated because it does not fall within one of the sixteen delineated areas defining the Defendants' regulatory authority. The policy must therefore be deemed a nonregulatory requirement, since it directly relates to self-determination contracts. As such, it is in violation of ISDEAA Section 450k(a)(1).

Plaintiff relies on *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338 (D.C. Cir. 1996), which challenged the BIA's policy that a tribe failing to timely file for certain funds would be penalized and only receive 50 percent of its funding request. The court held that the Secretary has limited discretion in funding matters. Beyond the sixteen delineated areas, the Secretary had no delegated authority to impose or implement any regulations, rules, or policies affecting the approval or disapproval of a 638 contract. The court in *Ramah* held that if the 50 percent policy constituted a "regulation," it violated the ISDEAA because it was never subjected to the APA's notice and comments procedure, which is required by Section 450k(a)(2). Alternatively, if the policy were not a regulation, then it constituted a nonregulatory

requirement, which is strictly prohibited under Section 450k(a)(1). *Id.* at 1350. Plaintiff asserts that the same reasoning applies here with regard to Defendants' policy of not funding P.L. 280 states.

Defendants respond that OJS did not decline the 638 contract for a "non-regulatory" reason. Rather, declining a contract proposal because the "amount of funds proposed . . . is in excess of the applicable funding level for the contract" is one of the five permissible reasons specified under the ISDEAA. 25 U.S.C. § 450f(a)(2). While that was the stated reason, the Court finds that the actual reason was the policy to deny funding to P.L. 280 states. In other words, Plaintiff's application was dead on arrival and not provided proper review. The Court notes that Plaintiff is challenging neither the declination itself nor Defendants' stated reason for it, but rather the underlying policy—i.e., the reason why the "applicable funding level" is zero. Defendants further claim that unlike *Ramah*, because the agency has unreviewable discretion to decide how to allocate its law enforcement dollars, its decision not to allocate funds does not impose a regulatory or non-regulatory requirement in violation of Section 450k. Again, however, the Court is not directing Defendants to allocate funds, so their discretion to do so is not affected. Further, as discussed below under subsection E., the ISDEAA does not provide Defendants the broad unreviewable discretion that they claim.

The Court therefore agrees with the Plaintiff that Defendants' unwritten policy violates Section 450k of the ISDEAA.[2] As in *Ramah*, if viewed as a regulation, it would violate Section 450k(a)(2) because it was never subjected to the APA's notice and comments procedure. Since it has not been promulgated (and cannot be because it is outside of the sixteen delineated areas), it must be deemed a

---

[2] Although Defendants dispute the existence of the unwritten policy, the Court finds there is no genuine dispute as to this fact because the administrative record supports that there is an unwritten policy denying law enforcement funding to P.L. 280 states. *See, e.g.*:
- AR at 305 (Recommended Decision of BIA's Designated Representative, stating that "the fundamental issue here . . . is the BIA-OJS' policy to exclude Tribes in California and other P.L. 280 states from ever getting any 638 funds to provide law enforcement services in their communities");
- AR at 164 (Transcript of Los Coyotes Informal Conference, noting that "this has been sort of an internal policy that has been in place . . . since 1953");
- AR at 253 (Informal Hearing for similar Hopland tribe proceeding, stating that "it's my understanding . . . that the funds that we specifically request for law enforcement are funds for those tribes that are not subject to [P.L. 280]");
- AR at 359 (BIA's 1987 proposed rule attempting to amend the regulations to exclude P.L. 280 tribes from receiving BIA law enforcement funding, in order "to ensure a consistent [BIA] policy on such funding requests").

nonregulatory requirement, in violation of Section 450k(a)(1). Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on this claim, and denies the Defendants' Cross Motion for Summary Judgment on this claim.

**B.     The APA**

Plaintiff next asserts that Defendants' policy violates the APA on two separate grounds: (1) it violates the APA's rulemaking provisions, and (2) it is arbitrarily applied in violation of the APA.

*1.     APA Rulemaking Provisions*

The APA requires federal agencies to promulgate agency rules by providing notice of the rule in the Federal Register and allowing for public comment and participation. 5 U.S.C. § 553(b). Plaintiff argues that a policy automatically denying tribes law enforcement funding solely on their geographical location is a substantive rule that significantly affects tribes in P.L. 280 states. It therefore is subject to the APA but has not been properly promulgated, making it invalid. Plaintiff relies on *Morton v. Ruiz*, 415 U.S. 199 (1974), in which the U.S. Supreme Court found that the BIA's manual with regard to general assistance to Indians violated the APA. The Court explained that while the BIA may have had the authority to establish eligibility rules, the rules must follow APA procedures. *Id.* at 232 ("No matter how rational or consistent with congressional intent a particular decision might be, the determination of eligibility cannot be made on an *ad hoc* basis by the dispenser of the funds.").

In response, Defendants argue that their denial did not require notice and comment. The APA contains an exemption for a "general statement of policy," which is not subject to the notice and comment requirement. 5 U.S.C. § 553(b)(A). Defendants rely on *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993), which held that the Indian Health Service's discontinuance of the Indian Children's Program was a general statement of policy, not subject to notice and comment, because it was a "statement[] issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." The Court further held: "Whatever else may be considered a 'general statemen[t] of policy,' the term surely includes an announcement like the one before us, that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation." *Id.*; *see also Serrato v. Clark*, 486 F.3d 560, 569 (9th Cir. 2007). Defendants assert that similarly, its discretionary

decision about how to allocate funds for law enforcement services among the tribes did not require notice and comment.

The Court does not agree with Defendants' assertion that this is a "general statement of policy" exempted from the APA's requirements. This same issue was addressed in *Ramah*, which, unlike *Lincoln* and *Serrato*, dealt specifically with the ISDEAA. In *Ramah*, the defendant similarly argued that the policy qualified as a "general statement of policy" and thus fell outside the scope of both Section 450k and the APA's notice and comment procedures. However, the court rejected the argument, since it hinges on an agency's exercise of discretionary power, and the court had already determined that the ISDEAA limited the Secretary's discretionary power: "[W]e have already determined that the allocation of insufficient CSF did not fall within the scope of the Secretary's limited discretionary powers, and ipso facto that the Notice of that allocation plan *cannot constitute a general statement of policy*." *Ramah*, 87 F.3d at 1350 (emphasis added). Similarly, the Court finds that Defendants' unwritten policy cannot constitute a "general statement of policy," due to Defendants' limited discretionary powers under the ISDEAA. Defendants have consequently violated the APA by failing to follow the notice and comment procedures.[3]

Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on this claim, and denies the Defendants' Cross Motion for Summary Judgment on this claim.

### 2. *Defendants' Arbitrary Application of the Policy*

Plaintiff claims that Defendants have arbitrarily applied the policy in further violation of the APA. OJS attached to its declination a list of tribes that have received 638 contracts for law enforcement. The list contained three California tribes that straddle the border with Nevada and Arizona (which are not

---

[3]As an additional argument, Plaintiff notes that Defendants' previous attempt at APA compliance further undercuts their current position on the APA's notice and comment requirement. The Court agrees. In 1987, the BIA attempted to promulgate a regulation that would have formalized its current policy of not funding tribes in P.L. 280 states. The proposed regulation was never finalized. Plaintiff points to a December 21, 1987 House Conference Report that expressly repudiated the proposed regulation. It directed the BIA to continue providing funding for law enforcement programs on the basis of demonstrated need and stated that "no tribe shall be denied funding for a law and order program solely on the basis of [P.L. 280]." (*See* PMJS at p. 10; AR at 362.)

Defendants respond that the 1987 proposed regulation is irrelevant, since it was never finalized and thus never became legally binding upon the agency. However, even if it does not provide binding legal support, the Court believes it provides factual support for Plaintiff's argument. Its very existence indicates that Defendants had previously determined the policy was subject to the APA rulemaking process.

P.L. 280 states). At the informal hearing, OJS acknowledged that the funding provided to these tribes was in no way restricted to the portion of the reservations outside of California. Therefore, at least three tribes with portions of their reservations in California receive law enforcement funding through a 638 contract. Further, the list contained several tribes in other P.L. 280 states (Minnesota, Wisconsin, and Florida) that were rewarded 638 contracts for law enforcement. (PMSJ at p. 11.)  According to Plaintiffs, it makes no rational sense that some California tribes and tribes in other P.L. 280 states receive law enforcement funding while Plaintiff cannot—clearly demonstrating the arbitrary application of Defendants' policy in violation of the APA.[4] The Court agrees. Defendants have provided no reasonable explanation for why some tribes in P.L. 280 states receive law enforcement funding, while others do not. The Court therefore finds that the Defendants have violated the APA by their arbitrary application of the policy.

Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on this claim, and denies the Defendants' Cross Motion for Summary Judgment as to this claim.

**C.     Equal Protection**

Plaintiff claims Defendants' policy violates its tribal members' constitutional right to equal protection of the law, since it disproportionately denies California tribes law enforcement funding. Plaintiff relies on *Rincon Band of Mission Indians v. Califano*, 464 F. Supp. 934 (N.D. Cal. 1979), *affirmed by* 618 F.2d 569 (9th Cir. 1980). At issue in *Rincon* was whether an Indian Health Services ("IHS") policy disproportionately denied California Indians health care funding by excluding certain program expansion funds. In holding the IHS funding policy unconstitutional, the court found no rational basis for underfunding California.

Here, Plaintiff asserts, California tribes and their members are once again being denied funding that other tribes in the United States receive. Plaintiff again cites to the 2002 report (*see supra* n. 4) regarding funding disparities between California and other states. For example, in 1995 California tribes were receiving less than 1% of Defendants' $80,440,000 allocation for law enforcement. (PMSJ at p. 14.)

---

[4] In addition, according to the designated representative's recommended decision, "In 1990, the BIA provided the San Diego and Riverside County Sheriffs Departments with 638 contract funds in order for them to provide greater law enforcement to Tribes in those counties." (*See* AR at 313.) Further, Plaintiff points to a 2002 report by UCLA law professors Carole Goldberg and Duane Champagne, which documents that tribes in P.L. 280 states other than California (including Wisconsin and Oregon) are receiving BIA funds for law enforcement. (PMSJ at p. 12.)

These funding percentages are as low as the percentages in *Rincon*, which the court found unconstitutional. Plaintiff contends that there is no rational basis for Defendants' declination, and Defendants' policy has thus denied its members the equal protection of the law.

Defendants respond that Plaintiff's claim is subject to rational basis scrutiny, which is "highly deferential," since all government programs conferring monetary benefits come with a "strong presumption of constitutionality." *Mathews v. De Castro*, 429 U.S. 181, 185 (1976). Defendants claim it is well settled that the government has broad discretion to allocate funds for programs such as law enforcement among the 565 federally recognized tribes around the country without violating equal protection rights. *Dandridge v. Williams*, 397 U.S. 471, 485 (1970).

Defendants further argue that Plaintiff ignores the "fundamental fact" that tribes in P.L. 280 states are not the same as tribes in non-P.L. 280 states, and so Plaintiff cannot show an equal protection violation. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (stating that equal protection only applies to "persons who are in all relevant respects alike"). Specifically, Defendants contend that tribes in P.L. 280 states have the benefit of state criminal jurisdiction on tribal lands for crimes committed by Native Americans, while tribes in non-P.L. 280 states do not.

It appears there are two separate equal protection issues, relating to (1) P.L. 280 states vs. non-P.L. 280 states, and (2) P.L. 280 states vs. other P.L. 280 states. With regard to the former, the Court is not convinced by Plaintiff's argument that there is no rational basis for excluding P.L. 280 states from funding eligibility. As Defendants note, the standard for rational basis scrutiny is high, and the benefit of state criminal jurisdiction (however illusory it may be) would seem to distinguish the two groups. There was no such distinction in *Rincon*. Plaintiff has therefore not provided sufficient evidence of the commonality of tribes in P.L. 280 and non-P.L. 280 states to sustain an equal protection claim.

However, Plaintiff's argument is stronger that the disparate treatment of tribes *within* P.L. 280 states constitutes an equal protection violation, since those tribes are similarly situated by virtue of being in P.L. 280 states. (As noted above, certain tribes in California and other P.L. 280 states have received 638 contracts for law enforcement funding.) There is no longer the distinction of state jurisdiction, and Defendants have not provided evidence of any rational basis for providing law enforcement funds to some tribes in P.L. 280 states, but not others. The Court therefore concludes that through their differing

treatment of tribes within P.L. 280 states, Defendants have violated Plaintiff's right to equal protection of the law. Accordingly, the Court grants Plaintiff's Motion for Summary Judgment on this claim, and denies the Defendants' Cross Motion for Summary Judgment as to this claim.

**D.     Federal Trust Responsibilities**

Finally, Plaintiff argues that Defendants' policy violates the trust relationship between the federal government and tribes. *United States v. Mitchell*, 463 U.S. 206, 225-26 (1983). Determining whether the federal government owes a tribe specific trust obligations requires looking to the legal authorities that are claimed to have created the specific trust relationship. Here, Plaintiff looks to the Snyder Act, the ISDEAA, the Indian Law Enforcement Reform Act ("ILERA"), and the Tribal Law and Order Act of 2010 ("TLOA"):

- The Snyder Act provides that the BIA will direct, supervise, and expend funds for the benefit (including law enforcement) of the Indians. 25 U.S.C. § 13.
- Both the ISDEAA and its implementing regulations recognize the federal government's trust responsibility to ensure that tribes are given the opportunity to contract for the administration of federal programs and services to make them less dependent on the federal government and enhance tribal self determination. *See* 25 C.F.R. § 900.4(b).
- Defendants' authority and responsibility to provide law enforcement services are mandated under the ILERA, which provides that the "Secretary, acting through the Bureau, shall be responsible for providing, or for assisting in the provision of law enforcement services in Indian country." 25 U.S.C. § 2802.
- Section 202 of the TLOA reaffirms the congressional and presidential commitment to law enforcement in Indian Country.

Plaintiff concludes that from these federal statutes and regulations, Defendants have defined their legal and trust obligation to provide law enforcement services and support to the Plaintiff in its efforts to make its community safe. According to Plaintiff, denying the 638 contract violates Defendants' responsibility for law enforcement on Plaintiff's reservation.

Defendants respond that the Indian trust doctrine does not give rise to any duty on the part of the United States beyond complying with generally applicable statutes and regulations. *Gros Ventre Tribe v.*

*United States*, 469 F.3d 801, 810 (9th Cir. 2006). The trust relationship between the United States and Indian tribes is insufficient to create legal obligations by the United States for a particular tribe. *See Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 921, 927-28 (9th Cir. 2008). When a tribe sues the government for equitable relief, it must identify a substantive source of law that establishes **specific fiduciary or other duties**, and allege that the Government has failed faithfully to perform those duties. *See Gros Ventre Tribe*., 469 F.3d at 812. According to Defendants, the statutes and regulations cited by Plaintiff contain general statements but do not confer the required specific duty on Defendants.

The Court agrees with Defendants and does not find that the requisite duty emanates from the statutes and regulations proffered by the Plaintiff. Without a specific duty, there can be no violation of the trust doctrine. Plaintiff's Motion for Summary Judgment is therefore denied on this claim, and Defendants' Cross Motion for Summary Judgment is granted as to this claim.

**E.      Defendants' Argument Regarding the Court's Jurisdiction Over APA Claims**

Defendants claim their decision not to provide funding for law enforcement services to the tribe is not susceptible to judicial review under the APA because the decision is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). They rely on *Lincoln* for the proposition that an agency decision about how to allocate funds from a lump-sum appropriation is the most common and relevant example of an administrative decision committed to agency discretion and thus precluded from judicial review. *Lincoln*, 508 U.S. at 192. *Lincoln* involved a challenge to IHS's decision to discontinue the Indian Children's Program, which the Supreme Court concluded was a decision about how to allocate funds from a lump-sum appropriation and was therefore committed to agency discretion and precluded from judicial review. *Id.* at 193-94. The Court held that "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192.

Defendants further claim that federal courts have consistently recognized that an agency's decision as to how to allocate scarce funding resources is "committed to agency discretion by law" and therefore unreviewable under the APA so long as the allocated funding is otherwise spent on permissible

statutory objectives.[5] Defendants conclude that the appropriation provision at the heart of Plaintiff's challenge is subject to the same analysis.

Plaintiff responds that contrary to Defendants' claims, the APA creates a strong presumption of judicial review of agency actions, and that the Supreme Court has found that lack of judicial review is a "very narrow exception" applicable only in "rare instances." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967).

Plaintiff claims *Ramah* governs, not *Lincoln*. *Ramah* explicitly addresses why *Lincoln* is inapplicable. As here, the defendants in *Ramah* raised *Lincoln* to prevent the court from reviewing the BIA's allocation of an insufficient lump-sum appropriation to cover plaintiff's contract support services under a 638 contract. However, the *Ramah* court rejected the *Lincoln* defense, finding that the "key to any determination of reviewability is congressional intent," and that "we begin with the strong presumption that Congress intends judicial review of administrative act." *Ramah*, 87 F.3d at 1343. The court found that there was nothing in the text or history of the ISDEAA or in prior case law to support a conclusion that the ISDEAA committed allocation of funds to agency discretion. It also found that Congress has clearly expressed in the ISDEAA both its intent to tightly circumscribe the Secretary's discretion, and also to make available judicial review of all agency actions (citing 25 U.S.C. 450k(a), 450m-1(a)). The *Ramah* court found that the ISDEAA "reveals that ***not only did Congress not intend to commit allocation decisions to agency discretion, it intended quite the opposite; Congress left the Secretary with as little discretion as feasible.***" 87 F.3d at 1334 (emphasis added). Plaintiff concludes that in light of *Ramah*, the strong presumption in favor of judicial review, the clear mandate from the ISDEAA, and congressional intent, Defendants' argument regarding jurisdiction is without merit.

---

[5]*See, e.g.*, *Serrato,* 486 F.3d at 568-69 (prioritizing funds for BOP programs within statutory appropriations mandate was not reviewable); *Collins v. United States*, 564 F.3d 833, 839 (7th Cir. 2009) ("The prioritization of demands for government money is quintessentially a discretionary function."); *St. Tammany Parish v. FEMA*, 556 F.3d 307, 325 (5th Cir. 2009) ("Eligibility determinations, the distribution of limited funds, and other decisions regarding the funding of eligible projects are inherently discretionary and the exact types of policy decisions that are best left to the agencies without court interference."); *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 66 (2004) ("The principal purpose of the APA limitations . . . is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve.").

The Court agrees that *Ramah* appears to be directly on point. Unlike the cases Defendants cite, *Ramah* deals specifically with the ISDEAA. The Court therefore concludes that it retains jurisdiction to review Plaintiff's APA claims. While agencies may sometimes have discretion to allocate funds from a lump-sum appropriation, *Ramah* makes clear that it is not so under the ISDEAA, since Congress intended to limit the Secretary's discretionary power. The Court therefore rejects Defendants' claim that they have unreviewable discretion to allocate these funds. Regardless, as noted above, this case is not about the allocation of funds, but rather the *eligibility* to be considered for a 638 contract in the first place. Any concerns Defendants may have regarding their ability to allocate funds are thus unfounded. The Court therefore denies Defendants' Cross Motion for Summary Judgment as to this claim.

## IV.

## CONCLUSION

For the reasons discussed above, the Court hereby enjoins Defendants from denying Plaintiff's 638 contract solely on the basis of California's status as a P.L. 280 state. The Court finds that Defendants' unwritten policy of denying law enforcement funding to tribes in P.L. 280 states violates the ISDEAA, the Administrative Procedures Act, and Plaintiff's right to equal protection of the law. The Court therefore **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Summary Judgment, and **GRANTS** in part and **DENIES** in part Defendants' Cross Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  October 28, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge